ANNA L. DECOCQ, Respondent, v. LEOPOLD J. DECOCQ *et al.*, Appellants.

St. Louis Court of Appeals, March 9, 1897; Motion for Rehearing Overruled.

Partnership Business, Adjustment of: FRAUD: WEIGHT OF EVIDENCE. In a suit in equity to set aside certain alleged settlements of a partnership business, between plaintiff, the widow of the deceased partner, and defendant, the surviving partner, on the ground that they were made without consideration, and that plaintiff was induced to make them through the fraudulent representations of defendant,—*Held:* That the settlements were fairly made, and the weight of the evidence was against plaintiff's contentions.

*Appeal from the Barry Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED.

*J. B. McGuffin, Pepper & Steel,* and *Jos. French* for appellants.

Instructions 1, 2, and 3, correctly stated the law, were based upon the evidence, and should have been given. *Perry's Adm'r v. Roberts,* 17 Mo. 36; *Stephens v. Spiers,* 25 *Id.* 386; *Kronenburg v. Binz,* 56 *Id.* 121; *Pichel v. St. Louis Chamber of Commerce,* 10 Mo. App. 191; *Tumility v. Tumility,* 13 *Id.* 444.

Settlements made between parties will only be set aside for mistake, fraud, or duress. *Mateer v. R'y,* 105 Mo. 320; *Maack v. Schneider,* 51 Mo. App. 92; *Mitchell v. Henley,* 110 Mo. 598.

A debt of a creditor paid by a third person, without any agreement that the security shall be kept on foot for the benefit of such third person, is absolutely extinguished. Sheldon on Subrogation, sec. 3; *Bunn v. Lindsay,* 95 Mo. 250; *Wade v. Beldmeier,* 40 *Id.* 486; *Kleimann v. Gieselmann,* 114 *Id.* 437; *R. R. v. McCaughey,* 62 Tex. 621; *R. R. v. Wortendyke,* 27 N. J. Eq. 658; *Shinn v. Budd,* 14 *Id.* 234; *Webster's Appeal,* 86 Pa. St. 409; *McClure v. Andrews,* 68 Ind. 97; *Guy v. Du Uprey,* 16 Cal. 195; *Grady v. O'Reilly,* 116 Mo. 346; Sheldon on Subrogation, sec. 248.

One loaning money to another, to remove a lien on land, is not thereby subrogated to the rights of the lienor. *Price v. Courtney,* 87 Mo. 387; *Cornwell v. Orton,* 126 *Id.* 356; *Woolridge v. Scott,* 69 *Id.* 669; *Nichol v. Dunn,* 25 Ark. 129.

Plaintiff can not, at the same time she takes the benefit of the securities, claim also the advantage of

having extinguished them by her payment. Sheldon on Subrogation, sec. 249; *Thompson v. Hudson,* L. R. 2 Ch. 255; *Byrne v. Bank,* 31 Lea. Ann. 81.

*Cloud & Davis* for respondent.

The defendants' plea of accord and satisfaction is unavailing, as there has been no disputed account, or, if there was, no satisfaction thereof. *Maack v. Schneider,* 51 Mo. App. 92; *Helling v. United Order of Honor,* 29 *Id.* 309; *Goff v. Mullholland,* 28 Mo. 397; *Giboney v. Ins. Co.,* 48 Mo. App. 185; *Wilkerson v. Bruce,* 37 *Id.* 156. See, also, *Shotwell v. Munroe,* 42 Mo. App., at 677; *Bank to use v. Peterman,* 21 *Id.* 512; *Commiskey v. McPike,* 20 *Id.* 83; 1 Am. and Eng. Ency. Law, 102.

The action of the court setting aside the settlement, if it be conceded that there was a colorable claim of defendants to be adjusted, is abundantly sustained by the evidence, and this court will defer to the finding of the trial court, even in equity cases, when the evidence is conflicting. *Griffith v. Townley,* 69 Mo. 22; *Nelson v. Butts,* 21 Mo. App. 219, 230; *Erskine v. Lowenstein,* 82 Mo. 301.

This being an action in equity, the court did not err in refusing the instructions asked by defendant, even had they correctly declared the law applicable to the case. *Leeper v. Taylor,* 111 Mo. 321.

When a third person, at the request of the mortgagor, or for his own protection, pays the debt secured by the mortgage, he becomes entitled to the benefit of the mortgage; and a court of equity will subrogate him to all the rights of the creditor. *Wolf v. Walter,* 56 Mo. 295. See, also, *Norton v. Highleyman,* 88 Mo. 624; *Johnson v. Goldsby,* 32 Mo. App. 565; *Williams v.*

*Perkins*, 83 Mo. 376; *Moore v. Lindsay*, 52 Mo. App. 480; *Sears v. Patterson*, 54 *Id*. 281.

BIGGS, J.—The plaintiff is the widow, and the defendant Leopold Decocq is the brother of Peter Decocq, who died intestate in the spring of 1894. He left two children. The deceased and Leopold owned adjoining farms. They seem to have conducted their farming operations as partners. At the time of the death of Peter the firm owned considerable property consisting of live stock, and it owed six or seven thousand dollars. Adolphus Decocq, another brother, administered on both the individual and partnership estates. Among the debts of the firm there was one due Mrs. Sass for $700, and one due Lucian Marchant for $400. Peter was individually responsible for certain other debts hereinafter mentioned. The life of the deceased was insured for $2,500 for the benefit of plaintiff, which amount she collected. Leopold owed Mrs. Linzee $1,476, which was secured by a deed of trust on his farm. On the thirty-first day of May, 1894, the plaintiff at the request of Leopold paid off this debt, using a portion of the insurance money for that purpose. The note held by Mrs. Linzee was delivered up to Leopold for cancellation. On the twentieth of August following, the plaintiff and Leopold met for the purpose of adjusting their business matters. By the terms of that settlement Leopold agreed to execute two notes in payment of the balance found to be due plaintiff, to wit: One for $165, .due three years after date bearing eight per cent interest after maturity, and one for $335, due in five years with eight per cent interest from date. These notes were signed by Leopold and delivered to plaintiff. As a part of the settlement the parties executed the following agreement:

VOL. 69 app—36

"PURDY, Mo.

"I, Leopold Decocq, party of the first part, agree to pay all debts now out, the Mary Sass note of seven hundred dollars, and the Lucian Marchant note of four hundred dollars and pay all debts of Anna Decocq, and she agrees to pay half of the security notes of Oscar Horine one hundred and twenty-five dollars, one of Charles Mutrix, one hundred dollars, and one of J. G. F. Williams, two hundred and twenty-five dollars, and Leopold Decocq agrees to pay half of the same notes."

(Signed)         "LEOPOLD DECOCQ,
                 "LAURA DECOCQ."

The first mentioned notes were debts of the firm. The others were the individual obligations of the deceased. After this settlement was made the plaintiff became dissatisfied. She claimed that she was entitled to receive back the entire amount paid by her to Mrs. Linzee. After a good deal of wrangling she and Leopold met at the office of A. M. Peel, who is an attorney, for the purpose of readjusting the business. A new settlement was then agreed on. By its terms Leopold was to give two notes in place of those given on the first settlement, one for $200, due November 1, 1895, and the other for $300. due two years after date. A controversy had arisen between them about the division of some farming implements. That difference was also settled. The plaintiff did not have the old notes with her, and it was agreed that Leopold should sign and deliver the new notes, which Peel had written, whenever the plaintiff surrendered to him the old ones. This settlement was reduced to writing, and the paper left with Peel, who testified that he had misplaced it. At the same time Leopold delivered to plaintiff the following obligation:

"Know all men by these presents, that I, Leopold Decocq, of the county of Barry and state of Missouri, do, by these presents, relinquish and quitclaim, and set over all my right, title, and claim of whatsoever nature I may have, either lawful or equitable against the personal or landed estate of Peter Decocq, deceased, or against his widow, Anna L. Decocq, and hereby for a valuable consideration agree and bind myself not to molest said estate in any way whatsoever. I acknowledge that said estate is not indebted to me either directly nor indirectly in any sum whatever. This 19th day of April, 1895.

(Signed)      "LEOPOLD DECOCQ."

The new notes were never executed. The plaintiff testified that Leopold refused to sign them, and the latter claimed that he had always been ready and willing to do so whenever the plaintiff surrendered the old notes.

The foregoing is a brief statement of the facts out of which this litigation has arisen:

The present action is one in equity, in which the plaintiff asked in her petition that the alleged settlements between her and Leopold be set aside on the grounds that they were made without a consideration, and that the plaintiff was induced to make them through the fraudulent representations of Leopold. She also asked for a judgment against Leopold for the amount paid by her to Mrs. Linzee, and that she be subrogated to the former rights of Mrs. Linzee under the deed of trust which the latter held against Leopold's farm, and that the deed of trust be foreclosed and the farm sold to pay plaintiff's judgment.

The answer admitted the payment of the Linzee debt by the plaintiff, but denied that she was entitled to a judgment on account of it. The two settlements above referred to were pleaded in bar of the action.

On the hearing, the issues were found for the plaintiff. A decree was entered setting aside the settlements; a personal judgment was entered against Leopold for $1,476; the plaintiff to the extent of the judgment was subrogated to the rights and remedies possessed by Mrs. Linzee under the deed of trust; the defendant's equity of redemption thereunder was foreclosed, and the land ordered to be sold to satisfy the judgment and costs. From that decree the defendants have appealed.

The evidence convinces us that the settlements were fairly entered into. The contention of the plaintiff that from lack of business experience she did not fully comprehend the nature and scope of the settlements, or that she was induced to enter into the business through the fraudulent representations of Leopold, is not supported by the weight of the evidence. Indeed the great weight of the testimony is to the contrary. We find these facts to have been established: When the deceased bought his farm Leopold paid $1,000 of the purchase money. He borrowed the money from Mrs. Linzee. At the same time he borrowed from her $400 additional and gave the note which the plaintiff paid off. It was the intention of the deceased in taking out the insurance to provide the means to pay Leopold, in case he should die, but through inadvertence or ignorance the plaintiff was named as the sole beneficiary in the policy. The plaintiff was aware of all these facts, and after the first settlement was made and at the time she made the last one, she stated in effect that in equity and good conscience it was right that the debt of Mrs. Linzee should be paid out of the insurance money. This was evidently the basis of both settlements, and, if so, the settlements were fair. We are convinced that the plaintiff fully understood the

ADJUSTMENT of partnership business: fraud: weight of evidence.

business, and that she was in no wise misled or induced to enter into it by any misrepresentations on the part of Leopold. Several disinterested witnesses testified to conversations with her which show clearly that she had not acted under any delusion in making the first settlement, and that the only objection she urged against it was that the time in which the notes were to be paid was too long. Following this is the second settlement in the office of Mr. Peel, in which notes for the same amount, but maturing at earlier dates, were agreed to be substituted for the first notes. There is no pretense that any fraud was practiced in making this settlement, or that plaintiff did not understand what she was doing.

It is insisted, however, that there was no consideration for the settlements. This, we think, is not well founded. It is true that the plaintiff was under no legal obligation to reimburse Leopold for the money he had advanced to her husband when he purchased the farm. But she was interested in satisfying his claim in order to protect her homestead right in the farm. The evidence tends to show that the money paid by Leopold was the first payment on the land, and that the deceased acquired the title subsequently. Again, by the terms of the settlement Leopold agreed to pay one half of certain debts for which the estate was alone liable, thereby relieving to that extent the personal estate of the deceased in which the plaintiff was interested. We therefore conclude that the settlements were fairly made; that they included the money paid by plaintiff to Mrs. Linzee; that they were supported by an adequate consideration, and that they are binding on the plaintiff. This dispenses with any discussion of the question of subrogation.

With the concurrence of the other judges, the judgment of the circuit court will be reversed. All concur.